IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:13-CV-71-D

PAUL EUGENE CHERRY, )
)
Plaintiff, )
)
v. ) **ORDER**
)
ELIZABETH CITY STATE UNIVERSITY, )
)
Defendant. )

Paul E. Cherry ("Cherry" or "plaintiff"), an African-American male, is a retired police officer who worked at Elizabeth City State University ("ECSU" or "defendant"). Cherry (who proceeds pro se) claims that ECSU did not promote him to captain in April 2011 due to his race and later retaliated against him for complaining about race discrimination, thereby violating Title VII of the Civil Rights Act of 1964. See Am. Compl. [D.E. 21]. On August 12, 2015, ECSU moved for summary judgment [D.E. 35] and filed supporting exhibits [D.E. 35-1–35-23] and a memorandum of law [D.E. 36]. On August 31, 2015, Cherry responded in opposition. See [D.E. 37]. On September 10, 2015, ECSU replied. See [D.E. 38]. As explained below, the court grants ECSU's motion for summary judgment.

I.

In 2008, ECSU hired Cherry as a police officer. Cherry Dep. [D.E. 35-5] 5–6.[1] Cherry reported to Anton Thomas and Chief of Police Sam Beamon. Id. 6–7. Both Thomas and Beamon are African-American males. See id. 10–11.

---

[1] Citations to Cherry's deposition are to the deposition page numbers, not the CM-ECF page numbers.

Officer Mark Gray is white and became an ECSU police officer in May 2003. See [D.E. 35-10] 6, 10. In 2008, ECSU promoted Gray to sergeant, a supervisory position. See Gassaway Decl. [D.E. 35-3] ¶ 5. In 2009, ECSU gave Gray the title of detective, also a supervisory position, but did not increase Gray's pay. See id. ¶ 6.

On December 17, 2010, ECSU posted a job opening for "Position 983, Public Safety Supervisor," with a title of "Captain/Emergency Manager Coordinator." See Branch Decl. [D.E. 35-2] ¶¶ 2–7; [D.E. 35-7]. The captain position was at the "'advanced' (highest) competency level," and the person filling this role "would oversee the three shift supervisors within the police department and their officers as well as help manage the Department." Branch Decl. ¶ 6; see [D.E. 7]; [D.E. 8].

On January 5, 2011, ECSU reposted the captain position, including the emergency management duties of the position and adding a managerial preference for a bachelor's degree and three years of related supervisory work experience. See Branch Decl. ¶ 7; [D.E. 35-8]. ECSU reposted the position two more times in order to increase the number of applicants. See Branch Decl. ¶ 7.

On March 1, 2011, the posting closed. See [D.E. 35-14]. Eleven candidates applied for the captain position, including Gray and Cherry. See Gassaway Decl. ¶¶ 10–13; [D.E. 35-10]; [D.E. 35-11]. Gray's application reflected 27 years of law-enforcement, business-management, and military experience, including three years of law-enforcement supervisory experience at ECSU. See Branch Decl. ¶ 10; [D.E. 35-10] 6–10. Cherry's application reflected four years of experience as a police officer and no law-enforcement supervisory experience. See Branch Decl. ¶ 9; [D.E. 35-11]; Cherry Dep. 135–36. Specifically, Cherry's application stated that he had worked as a police officer for three years with ECSU and approximately one year with Louisburg College campus police. [D.E. 35-11] 8. In addition, Cherry had worked 1½ years as a delivery driver, 5½ years as a thrift store manager, and less than one year with the U.S. Postal Service. See id. 9.

2

Deborah Branch (an African-American female) served as chair of the search committee for the captain position. See Branch Decl. ¶¶ 3–4. Branch was ECSU's Associate Vice Chancellor of Student Affairs. See id. ¶ 2. The other committee members were Samuel Beamon (an African-American male), Anthony Brown (an African-American male), and Kulwinder Kaur-Walker (an Asian-American female). See id. ¶ 5. The captain position was a high-level position within the ECSU police department, "for which prior supervisory experience, particularly within a college or university, was deemed critical." Id. ¶ 6. The search committee "evaluated candidates across five competencies that [it] had developed for the position, including squad/department management, technical knowledge, communication skills, organizational awareness and commitment, and problem solving." Id. ¶ 8.

In April 2011, the committee interviewed four candidates. See id. ¶ 9. The committee did not interview Cherry due to his limited experience. See id. In April 2011, after the interviews, the committee unanimously selected Gray as captain due to his superior qualifications and interview performance. See id. ¶¶ 10–12. When selected, Gray had 18 years of experience as a police officer and additional U.S. Coast Guard experience. See id. Gray had been an ECSU police officer since 2003 and had been supervising several ECSU officers, security officers, and staff since 2008. Id. Gray also performed well during the interview. Id. ¶ 11. Branch never heard any discussion among committee members about any candidate's race and does not believe race factored into Gray's selection in any way. Id. ¶ 13. The committee unanimously selected Gray solely on his qualifications relative to the other candidates. Id. ¶ 14.

On April 26, 2011, Cherry filed an EEOC charge alleging race discrimination. See [D.E. 21-1]. In the EEOC charge, Cherry alleged:

> I. I have been employed with the police department since March 2008. I have over 16 years police related experience. [In] October 2008, the Police Chief told myself and Officer Wayne Barcliff (both Black) they were promoting Mark Gray to Sergeant. On or about June 1, 2009, Sergeant Gray was promoted to Detective. There were no announcements for either of these promotions. I applied for the position of Captain February 9, 2011. The position was re-announced two times,

3

each time adding requirements. The additional requirements were experiences Mark Gray received while being Sergeant and Detective. On April 20, 2011, I became aware that I was not selected for the position of Captain.

II. The reason given for promoting Mark Gray to Sergeant and Detective was because they needed to promote White officers in the department.

III. I believe I was denied promotion to the position of Captain because of my race, Black[,] and present effects of past discrimination due to race in violation of Title VII of the Civil Rights Act of 1964, as amended.

Id.

On October 6 and 7, 2011, Cherry called the ECSU tele-communicator and stated that he would not be reporting to work. See Cherry Dep. 65. ECSU policy requires officers to notify their supervisors whenever they are unable to report to work and notify another supervisor if the officer's immediate supervisor is not available. See id. 62–63; [D.E. 35-5] 129. Cherry failed to notify his supervisor, Anton Thomas, or any other supervisor that he would not be reporting to work on those two days. See Thomas Aff. [D.E. 35-20] ¶ 2; [D.E. 35-6] 13–14.

On October 21, 2011, Thomas gave Cherry a written warning for "unacceptable personal conduct" due to his violation of the work rule concerning whom to call when failing to report for duty. See [D.E. 35-5] 135–37. The warning expired in April 2013, without any loss of pay, benefits, or any other adverse employment effects for Cherry. See Cherry Dep. 71–72. Cherry did not receive a performance evaluation in either October or November 2011. See Gassaway Decl. ¶ 17.

On November 9, 2011, Captain Gray notified Cherry that he was being reassigned to the midnight to 8:00 a.m. shift due to an increase in criminal activity during that shift and because "[t]he 12 to 8 supervisor is out on extended medical leave. Two more 12 to 8 police officers are out, one on extended family medical leave and the other is on administrative leave." See [D.E. 35-5] 140. Although Cherry initially protested the shift change, Cherry later declined an opportunity to serve as a supervisor on the 4–12 p.m. shift. See Cherry Dep. 123–25.

On May 31, 2012, Cherry received a written performance evaluation for 2011–12. See Gassaway Decl. ¶ 18; [D.E. 35-19]. Cherry's overall performance rating for 2011–12 was "good,"

4

and Cherry received individual category ratings of "good" and "very good." Gassaway Decl. ¶ 18; [D.E. 35-19].

On June 6, 2012, Cherry filed another EEOC charge. See [D.E. 35-5] 122. In the EEOC charge, Cherry alleged retaliation and wrote:

> I. I filed charge number 437-2011-00567 on April 26, 2011 alleging discrimination. On October 21, 2011, I was issued a written warning. I called in the way other officers have called in to advise they were not gong to be at work. The other officers have not been disciplined. On October 29, 2011, I was given a low evaluation. On November 9, 2011, I was notified that I was being transferred to the midnight to 8 a.m. shift.
>
> II. The reason given for the disciplinary written warning was not notifying a supervisor of my absence. The reason given for the transfer was safety of the University while other officers were absent.
>
> III. I believe I have been written up, given a low evaluation and transferred to the midnight shift in retaliation for filing a prior charge of discrimination in violation of section 704 (a) of Title VII of the Civil Rights Act of 1964, as amended . . . .

Id.

The EEOC did not find cause to support Cherry's charge of race discrimination or retaliation, dismissed each charge, and issued a right to sue notice to Cherry concerning each charge. See [D.E. 35-5]. 123–24. On December 27, 2013, Cherry filed suit. See [D.E. 1, 3, 5]. On June 30, 2015, Cherry retired from ECSU. See Cherry Dep. 170–72.

II.

In considering a motion for summary judgment, the court views the evidence in the light most favorable to the non-movant and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48. The party seeking summary judgment must initially demonstrate

5

an absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 325. Once the movant meets its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Conjectural arguments will not suffice. See id. at 249–52; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party . . . cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Nor will a "mere . . . scintilla of evidence in support of the [nonmoving party's] position . . . ; there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252. In evaluating material submitted in support of or in opposition to a motion for summary judgment, the court may reject inadmissible evidence (such as hearsay). See Fed. R. Civ. P. 56(c)(4); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).

Title VII prohibits employers from "fail[ing] or refus[ing] to hire . . . any individual, or otherwise to discriminate against any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish such a Title VII violation in two ways. First, a plaintiff may demonstrate through direct evidence that illegal discrimination motivated an employer's adverse employment action. Alternatively, a plaintiff may proceed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See generally Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc).

Direct evidence is evidence from which no inference is required. To show race discrimination by direct evidence, a plaintiff typically must show discriminatory motivation on the part of the decisionmaker involved in the adverse employment action. See id. at 286–91. Such direct evidence would include a decisionmaker's statement that he did not promote a plaintiff due to his race. See id. at 303. The decisionmaker must be either the employer's formal decisionmaker or a subordinate who was "principally responsible for," or "the actual decisionmaker behind," the

6

allegedly discriminatory action. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151–52 (2000); Holley v. N.C. Dep't of Admin., 846 F. Supp. 2d 416, 427 (E.D.N.C. 2012). Nevertheless, courts should not quickly attribute "to any ultimate decision maker . . . the most unfortunate expressions and beliefs of those around him." Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 300 (4th Cir. 2010). "[T]hat any distasteful comments will arise in the workplace" is regrettable. Id. "[B]ut that cannot mean that the actual decision maker is impugned thereby. It is the decision maker's intent that remains crucial, and in the absence of a clear nexus with the employment decision in question, the materiality of stray or isolated remarks is substantially reduced." Id.; see Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608 (4th Cir. 1999), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).

First, Cherry claims that, in June 2008, Chief Samuel Beamon (an African-American male) told Cherry that ECSU Chancellor Willie Gilchrist (another African-American male) had told Chief Beamon to promote Gray to sergeant because Gray was white. See [D.E. 37] 26–27. Cherry then argues that this alleged hearsay from 2008 constitutes direct evidence of race discrimination concerning Gray's April 2011 promotion to captain. See id.

Cherry's argument fails. Chief Beamon's alleged comment in June 2008 concerning the alleged hearsay statement of Chancellor Gilchrist is not direct evidence of race discrimination concerning Gray's April 2011 promotion to captain. Even assuming that Chief Beamon made the hearsay comment in June 2008 concerning Chancellor Gilchrist, the hearsay statement is not admissible. See Fed. R. Civ. P. 56(c)(4); FDIC v. Cashion, 720 F.3d 169, 176 (4th Cir. 2013); Evans, 80 F.3d at 962.[2] Alternatively, even if admissible, the alleged statement does not concern the employment decision at issue: Gray's April 2011 promotion to captain. Thus, the alleged statement

---

[2] Cherry never filed a timely EEOC charge concerning Gray's 2008 promotion to sergeant, and any such claim is time barred. See Cherry v. Elizabeth City State Univ., No. 2:13-CV-71-D, 2014 U.S. Dist. LEXIS 133478, at *1 (E.D.N.C. Sept. 23, 2014) (unpublished).

7

is not direct evidence of race discrimination here. See, e.g., Merritt, 601 F.3d at 300; Brinkley, 180 F.3d at 608.

Furthermore, to the extent Cherry now contends Chief Beamon's alleged, ambiguous reference in 2011 to diversity equates to race discrimination in selecting Gray for captain, see Cherry Dep. 25–27, the contention contradicts Cherry's earlier testimony at his grievance hearing that he had no direct evidence of race discrimination concerning Gray's promotion to captain. See [D.E. 35-6] 5–19. As such, the alleged statement does not create a genuine issue of material fact. See, e.g., Stevenson v. City of Seat Pleasant, 743 F.3d 411, 422 (4th Cir. 2014); In re Family Dollar FLSA Litig., 637 F.3d 508, 512–13 (4th Cir. 2011); Erwin v. United States, 591 F.3d 313, 325 n.7 (4th Cir. 2010); S.P. v. City of Takoma Park, 134 F.3d 260, 273 n.12 (4th Cir. 1998); Miller v. FDIC, 906 F.2d 972, 975–76 (4th Cir. 1990); Townley v. Norfolk & W. Ry., 887 F.2d 498, 501 (4th Cir. 1989); Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984). Accordingly, Cherry lacks direct evidence of race discrimination concerning Gray's 2011 promotion to captain.

Even without direct evidence of race discrimination, a plaintiff's Title VII claim can survive summary judgment if the plaintiff raises a genuine issue of material fact under the burden-shifting framework established in McDonnell Douglas. Under this analysis, a plaintiff must first establish a prima facie case of discrimination. See, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–53 (1981). If a plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the defendant took the adverse employment action "for a legitimate, nondiscriminatory reason." Burdine, 450 U.S. at 254. If the defendant offers admissible evidence sufficient to meet its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." Hill, 354 F.3d at 285 (quotation omitted); see, e.g., Reeves, 530 U.S. at 143; Burdine, 450 U.S. at 256; King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003).

8

To establish a prima facie case of failure to promote based on race, a plaintiff must show (1) that he belongs to a protected class; (2) that he applied for the position at issue; (3) that he was qualified for that job; and (4) that the defendant rejected his application under circumstances supporting an inference of unlawful discrimination. See, e.g., Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 n.6 (4th Cir. 2005). An African-American male may prove the fourth element by showing that the employer rejected his application for promotion and filled the job with a white male. See Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994).

Here, Cherry admitted at his grievance hearing that he was not qualified to be a captain in 2011 due to a lack of supervisory law-enforcement experience. See [D.E. 35-6] 14–20. As such, Cherry has not established a prima facie case, and ECSU is entitled to summary judgment on Cherry's race- discrimination claim. See, e.g., Laber v. Harvey, 438 F.3d 404, 432 (4th Cir. 2006) (en banc); Williams v. Giant Food, Inc., 370 F.3d 423, 431 n.6 (4th Cir. 2004); Taylor v. Va. Union Univ., 193 F.3d 219, 231 (4th Cir. 1999) (en banc), abrogated on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).

Alternatively, even if Cherry established a prima facie case, then ECSU must provide a legitimate, non-discriminatory reason for promoting Gray. A defendant's burden of providing a legitimate, non-discriminatory reason is one of production, not persuasion. St. Mary's Honor Ctr., 509 U.S. at 509. A defendant must present its legitimate, non-discriminatory reason "with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." Burdine, 450 U.S. at 255–56. For example, an employer's good faith belief that another candidate is better qualified due to that employee's job performance and experience is a legitimate, non-discriminatory reason for an adverse employment decision. See, e.g., Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 259 (4th Cir. 2006); Diamond, 416 F.3d at 319; Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 189 (4th Cir. 2004); Evans, 80 F.3d at 960.

9

ECSU selected Gray because of Gray's substantial experience, including approximately 18 years as a police officer, and additional U.S. Coast Guard experience. See Branch Decl. ¶¶ 4–14. Gray's experience also included being an ECSU police officer since 2003, and serving in a supervisory capacity at ECSU from 2008 to 2011. See id. ¶ 10. Plus, Gray did well during his interview. Id. ¶ 11. These are all legitimate, non-discriminatory reasons for promoting Gray over Cherry. See, e.g., Evans, 80 F.3d at 960. Accordingly, ECSU has met its burden of production. See id. Thus, the burden shifts back to Cherry to demonstrate that ECSU's justification is a pretext for race discrimination. See, e.g., Hux v. City of Newport News, 451 F.3d 311, 314–15 (4th Cir. 2006).

A plaintiff can demonstrate pretext by showing that the alleged non-discriminatory "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of race discrimination." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted). In conducting this analysis, the court does not sit to decide whether the defendant in fact discriminated against the plaintiff based on race. See, e.g., Holland v. Washington Homes, Inc., 487 F.3d 208, 217 (4th Cir. 2007); Hawkins v. Pepsico, Inc., 203 F.3d 274, 279–80 (4th Cir. 2000). Rather, the focus concerns whether plaintiff has raised a genuine issue of material fact as to pretext within the meaning of Reeves and its Fourth Circuit progeny. See, e.g., Hux, 451 F.3d at 314–19; Dugan v. Albemarle Cty. Sch. Bd., 293 F.3d 716, 722 (4th Cir. 2002).

In asserting that the ECSU's justifications for promoting Gray are pretextual, Cherry fist argues that ECSU tailored the position description for captain to mirror Gray's experience. See [D.E. 37-1] 19–21. Notably, however, ECSU initially reposted the position before either Gray or Cherry applied, so as to correct an inadvertent omission concerning a hiring freeze. See Gassaway Decl. ¶¶ 8–13; [D.E. 35-7]; [D.E. 35-8]. Moreover, ECSU reposted the position two additional times after Gray and Cherry applied in order to increase the applicant pool, and such reposting obviously did not favor Gray who already had applied. See Gassaway Decl. ¶¶ 12–13; Branch Decl. ¶ 7; [D.E. 35-9]; [D.E. 35-12]; [D.E. 35-13]; [D.E. 35-14]; [D.E. 35-15]. Furthermore, a job posting for a

10

senior law-enforcement management position that references a preference for law-enforcement management experience is not evidence that an employer intentionally sought to exclude African-Americans in general, or to exclude Cherry in this case. Cf. Feldman v. Law Enf't Assocs. Corp., 752 F.3d 339, 350 (4th Cir. 2014) (holding that a federal court does not sit as a "super-personnel department" to review the "prudence of employment decisions") (quotation omitted); Jiminez v. Mary Washington College, 57 F.3d 369, 383–84 (4th Cir. 1995) (holding that Title VII does not prescribe an employer's determination of preferred or required job requirements).

Next, Cherry argues that his experience was comparable to Gray's experience. See [D.E. 37] 4–5. Cherry also argues that Thomas Gallop and Sergeant Thomas (both African-Americans) were also qualified to serve as captain, but were not selected. See id.

When determining whether a plaintiff has sufficiently demonstrated the falsity of an employer's proffered justification, courts must recognize that an "employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." Burdine, 450 U.S. at 259; see Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998); Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1130 (4th Cir. 1995); Mallory v. Booth Refrigeration Supply Co., 882 F.2d 908, 909–11 (4th Cir. 1989).

As for Cherry's argument that he was as qualified as Gray, if a plaintiff makes a strong showing that he was "discernibly better qualified" than the candidate selected for a promotion, a plaintiff may have successfully raised a genuine issue of material fact as to whether the employer's proffered justifications for hiring the successful applicant are pretextual. See Heiko, 434 F.3d at 261–62. But "[w]hen a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer." Id. at 261; see Hux, 451 F.3d at 314–19; Causey, 162 F.3d at 801.

11

Cherry has not raised a genuine issue of material fact concerning whether he was discernibly better qualified than Gray. Indeed, Cherry's law-enforcement experience pales in comparison to Gray's law-enforcement experience. Likewise, Gray's supervisory experience (in both law-enforcement and non-law-enforcement positions) demonstrably exceeds Cherry's. Moreover, Cherry's self-evaluation of his experience does not alter this conclusion. See, e.g., Evans, 80 F.3d at 960; Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980); McDougal-Wilson v. Goodyear Tire and Rubber Co., 427 F. Supp. 2d 595, 607 (E.D.N.C. 2006). The same conclusion holds true concerning Cherry's vague reference to the alleged experience of Gallop or Thornes. See Causey, 162 F.3d at 801. Thus, Cherry's pretext argument fails.

Finally, Cherry's response in opposition to ECSU's motion for summary judgment includes numerous, unsworn, unauthenticated documents. See [D.E. 37]. Such documents do not create a genuine issue of material fact. See Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including . . . documents . . . or other materials . . . ."); Evans, 80 F.3d at 962; Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993) ("It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment.").

In sum, Cherry has failed to raise a genuine issue of material fact as to race discrimination. Thus, the court grants the ECSU's motion for summary judgment on Cherry's race-discrimination claim.

III.

Next, the court addresses Cherry's retaliation claim. Cherry has no direct evidence of retaliation and relies on the McDonnell Douglas framework. Under McDonnell Douglas, a plaintiff must first establish a prima facie case of retaliation. See, e.g., St. Mary's Honor Ctr., 509 U.S. at 506; Burdine, 450 U.S. at 252–55; Holland, 487 F.3d at 218; Spriggs v. Diamond Auto Glass, 242 F.3d 179, 190 (4th Cir. 2001).

12

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in protected activity; (2) his employer took an action against him that a reasonable employee would find materially adverse; and, (3) the employer took the materially adverse employment action because of the protected activity. See, e.g., Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 271 (4th Cir. 2015) (en banc); Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 410 (4th Cir. 2013); Holland, 487 F.3d at 218; Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004); Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 543 (4th Cir. 2003); Spriggs, 242 F.3d at 190; see also Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2524–33(2013); Burlington N. & Sante Fe Ry. v. White, 548 U.S. 53, 67–70 (2006). An adverse employment action includes "a discriminatory act that adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." Holland, 487 F.3d at 219 (quotation omitted) (alteration in original). A plaintiff establishes this element if the complained-of action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry., 548 U.S. at 68 (quotation omitted). "[P]etty slights, minor annoyances, and simple lack of good manners" are insufficient to sustain a retaliation claim. Id. Title VII is not a civility code and such trivial harms are not materially adverse. Id.

Although Cherry engaged in protected activity when he filed his discrimination charge in April 2011, Cherry has not raised a genuine issue of material fact concerning whether he suffered materially adverse employment action after he filed his April 2011 EEOC charge. Notably, the October 21, 2011 warning concerning the phone-in policy did not result in any loss of pay or benefits and expired 18 months later. See Cherry Dep. 71–72. Moreover, Cherry's next performance evaluation following the warning was in May 2012, in which he received an "overall performance rating" of "good." See Gassaway Decl. ¶ 18; [D.E. 35-19]. Such an evaluation is hardly unfair, much less materially adverse. See, e.g., Burlington N. & Santa Fe Ry., 548 U.S. at 68–69; James, 368 F.3d at 377–78; Santa Cruz v. Snow, 402 F. Supp. 2d 113, 126 (D.D.C. 2005). As for the

13

November 2011 transfer to the midnight shift, Cherry cites nothing concerning the working conditions on that shift that a reasonable employee would find materially adverse. Although being on the midnight shift may have been annoying, it falls well short of conduct that would dissuade a reasonable worker from engaging in protected activity. As such, Cherry's transfer to that shift was not materially adverse. See Burlington N. & Santa Fe Ry., 548 U.S. at 68–69; Holland, 487 F.3d at 219 ("The mere fact that a new job assignment is less appealing to the employee . . . does not constitute adverse employment action."). Accordingly, Cherry's retaliation claim fails. See, e.g., Burlington N. & Santa Fe Ry., 548 U.S. at 67–70; Adams v. Anne Arundel Cty. Pub. Sch., 789 F.3d 422, 429–31 (4th Cir. 2015) (discussing a claim under the analogous retaliation provisions of the Americans with Disabilities Act and the Family and Medical Leave Act); Holland, 487 F.3d at 218–19; Holley, 846 F. Supp. 2d at 441–44; Williams v. Brunswick Cty Bd. of Educ., 725 F. Supp. 2d 538, 547 (E.D.N.C. 2010).

Alternatively, even if Cherry were to establish a prima facie case, ECSU has articulated a legitimate, non-retaliatory rationale for its employment decisions, and Cherry has failed to raise a genuine issue of material fact concerning pretext. See, e.g., Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 210–13 (4th Cir. 2014); Laing v. Fed. Express Corp., 703 F.3d 713, 721–23 (4th Cir. 2013). Specifically, Cherry's unsworn statement concerning the way in which ECSU administered the sick-call phone-in policy does not create a genuine issue of material fact. See Fed. R. Civ. P. 56(c)(4); Cashion, 720 F.3d at 176; Evans, 80 F.3d at 962; cf. [D.E. 37] 32–42; [D.E. 37-2] 20, 83. After all, ECSU submitted sworn testimony concerning the policy's enforcement. See [D.E. 35-20]; [D.E. 35-21]. Likewise, Cherry's unsworn complaint about whether he was really needed on the midnight shift due to increased criminal activity and the absence of other personnel does not create a genuine issue of material fact concerning pretext. See Fed. R. Civ. P. 56(c)(4); Cashion, 720 F.3d at 176; Evans, 80 F.3d at 962; cf. [D.E. 37-1] 1–9. Accordingly, the court grants the ECSU's motion for summary judgment on Cherry's retaliation claim under Title VII.

IV.

No rational jury could find that defendant failed to promote Cherry to captain due to his race or that defendant retaliated against Cherry for his April 2011 complaint concerning his non-promotion. Accordingly, the court GRANTS defendant's motion for summary judgment [D.E. 35]. Defendant may file its motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

SO ORDERED. This _2_ day of November 2015.

JAMES C. DEVER III
Chief United States District Judge